# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| INVISIBLE FENCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:17-cv-00082 |
| | ) | |
| PERIMETER TECHNOLOGIES, INC., | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Invisible Fence, Inc., for its Complaint against Defendant Perimeter Technologies, Inc., states as follows:

### I.    THE PARTIES

1.    Plaintiff Invisible Fence, Inc. ("IFI" or "Plaintiff") is a Delaware corporation with its principal place of business located at 10427 PetSafe Way, Knoxville, Tennessee 37932.

2.    Upon information and belief, Defendant Perimeter Technologies, Inc. ("Defendant") is a corporation organized under the laws of the State of Ohio with its principal place of business at 10 Vanguard Drive, Reading, Pennsylvania 19606. Upon information and belief, Defendant does business in Tennessee, including in this district. Defendant may be served with process through service upon its registered agent, Dennis L. Manes, located at 441 Vine Street, Suite 2900, Cincinnati, Ohio 45202.

### II.    NATURE OF ACTION

3.    This is an action for trademark infringement, unfair competition, false designation of origin, and dilution arising under Section 43 of the Trademark Act of 1946 ("Lanham Act"),

as amended, 15 U.S.C. § 1051 *et seq.*; common law trademark infringement, unfair competition and unjust enrichment under Tennessee law; and violations of the Tennessee Trademark Act, Tenn. Code Ann. § 47-25-501 *et seq.*

## III.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1338 in that this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

5.    This Court has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

6.    This Court has supplemental jurisdiction over the claims that arise under Tennessee law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the Lanham Act of the United States.  Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

7.    Upon information and belief, this Court has general personal jurisdiction over Defendant based on its continuous and systematic minimum contacts with residents of Tennessee through the distribution and sale of its goods and services (including but not limited to having franchisees and deriving revenue and profits from such franchisees) in Tennessee and specifically Anderson County, Tennessee; Blount County, Tennessee; Jefferson County, Tennessee; Knox County, Tennessee; Loudon County, Tennessee; and Sevier County, Tennessee.  Upon information and belief, this Court also has specific personal jurisdiction over Defendant based on its purposeful direction of its promotional and advertising activities and sales of its goods and services to residents and customers in Tennessee.  Indeed, on its website

2

located at www.petstop.com (the "Pet Stop Website"), Defendant states that "Pet Stop is Sold by Qualified Dealers Nationwide" and lists Rocky Top Dog Fence as Defendant's local dealer for Anderson County, Tennessee; Blount County, Tennessee; Jefferson County, Tennessee; Knox County, Tennessee; Loudon County, Tennessee; and Sevier County, Tennessee.

8.     Further, this Court has personal jurisdiction under Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-201 *et seq.*, because, upon information and belief, (1) Defendant has transacted business in Tennessee; (2) the tortious acts or omissions occurred in Tennessee; (3) the damages occurred in Tennessee to a corporation with its principal place of business in Tennessee; and (4) jurisdiction based on Defendant's contacts with Tennessee (including, but not limited to, sales of products and services) is not inconsistent with the Constitution of the State of Tennessee or the Constitution of the United States.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims arose in this District, and, upon information and belief, Defendant is subject to personal jurisdiction pursuant to Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-201 *et seq.*

## IV.     THE CONTROVERSY

### A.     PLAINTIFF'S FAMILY OF BRANDS

10.     Plaintiff is a well-known developer and manufacturer of electronic pet containment systems, avoidance and access products.

11.     Plaintiff is a subsidiary of Radio Systems Corporation ("RSC"), a leading developer and manufacturer of electronic pet containment systems, electronic dog training products and accessories, and behavioral and lifestyle product solutions.

12.     RSC is the parent company to several of the most recognizable pet brands in the world.  The RSC family of brands includes Invisible Fence® Brand (the preeminent electronic

pet containment brand), the PetSafe® brand (a leading pet training, containment and behavior solutions brand), the SportDOG Brand® (a leading brand for training and tracking equipment for sporting dogs), the Pet Loo™ brand (a leading brand for indoor/outdoor pet toilet products), among others, including without limitation, Drinkwell® Pet Fountains.

13.     The Invisible Fence® Brand continues to be the leader in technology and marketplace for innovative products in the electronic pet containment category.

## B.     PLAINTIFF'S FAMILY OF TRADEMARKS

14.     Commencing at least as early as August 1976, Plaintiff and its predecessors-in-interest have used the "INVISIBLE FENCING" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those offered and provided by others.

15.     Since at least as early as January 1983, Plaintiff and its predecessors-in-interest have used the "INVISIBLE FENCE" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those offered and provided by others.

16.     Since at least as early as July 15, 1992, Plaintiff and its predecessors-in-interest have used the "INVISIBLE" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those offered and provided by others.

17.     Among other intellectual property holdings, Plaintiff is the owner by assignment of a federal trademark registration, U.S. Reg. No. 1,600,470, for the trademark INVISIBLE FENCE® (the "INVISIBLE FENCE® Mark") for use as a source and designation of origin in connection with "electronic animal confinement unit comprising transmitters, electric

transformers, wires, and receiver collars" (the "'470 Registration").  A true and correct copy of the '470 Registration is incorporated by reference and attached hereto as **Exhibit 1**.

  18. The '470 Registration is valid and subsisting and remains in full force and effect. The '470 Registration has obtained incontestable status and is therefore conclusive evidence of the validity thereof and of Plaintiff's exclusive right to own and use the INVISIBLE FENCE® Mark in connection with the goods and services specified in the '470 Registration.

  19. Plaintiff is the owner by assignment of a federal trademark registration, U.S. Reg. No. 1,371,021, for the trademark INVISIBLE FENCING® (the "INVISIBLE FENCING® Mark") for use as a source and designation of origin in connection with "electronic animal confinement unit comprising transmitters, electric transformers, wires, and receiver collars" (the "'021 Registration").  A true and correct copy of the '021 Registration is incorporated by reference and attached hereto as **Exhibit 2**.

  20. The '021 Registration is valid and subsisting and remains in full force and effect. The '021 Registration has obtained incontestable status and is therefore conclusive evidence of the validity thereof and of Plaintiff's exclusive right to own and use the INVISIBLE FENCING® Mark in connection with the goods and services specified in the '021 Registration.

  21. Plaintiff is the owner by assignment of a federal trademark registration, U.S. Reg. No. 1,765,230, for the trademark INVISIBLE® (the "INVISIBLE® Mark") for use as a source and designation of origin in connection with "electrical animal confinement system comprising transmitter, wire and receiver" (the "'230 Registration").  A true and correct copy of the '230 Registration is incorporated by reference and attached hereto as **Exhibit 3**.

  22. The '230 Registration is valid and subsisting and remains in full force and effect. The '230 Registration has obtained incontestable status and is therefore conclusive evidence of

the validity thereof and of Plaintiff's exclusive right to own and use the INVISIBLE® Mark in connection with the goods and services specified in the '230 Registration.

23. Plaintiff also has established, through continuous, long-term use in commerce common law rights in the INVISIBLE FENCE Mark, the INVISIBLE FENCING Mark, the INVISIBLE Mark, and the use of the phrase "INVISIBLE FENCE" as a trade name or part of a trade name.

24. The afore-mentioned federally-registered and common law marks are hereinafter referred to collectively as the "INVISIBLE FENCE Marks."

25. Plaintiff owns by assignment all right, interest, and title to the INVISIBLE FENCE Marks, including all goodwill associated therewith and the right to sue for past, present, and future infringement.

26. Plaintiff has continuously used the INVISIBLE FENCE Marks and in the United States as a symbol of Plaintiff as the source and origin for high quality electronic pet containment systems, products and services.

27. Plaintiff's products and services have been widely advertised or promoted and extensively offered for sale throughout the United States, including, without limitation, within the State of Tennessee.

28. Plaintiff has expended considerable time, resources, and effort in promoting the INVISIBLE FENCE Marks and developing substantial goodwill associated therewith.

29. The INVISIBLE FENCE Marks are suggestive and inherently distinctive when used in conjunction with Plaintiff's goods and services.

30. Due to the continual use of the INVISIBLE FENCE Marks by Plaintiff, the INVISIBLE FENCE Marks have come to indicate a single source of Plaintiff's goods and

services.  The INVISIBLE FENCE Marks have further come to indicate Plaintiff as the single source of such quality goods and services.

31.     As a result of the long and exclusive use by Plaintiff of its INVISIBLE FENCE Marks, the large sales under the INVISIBLE FENCE Marks, and the large amount of money spent or foregone for advertising and promotion of its goods and services, the INVISIBLE FENCE Marks have become, through widespread and favorable public acceptance and recognition, an exclusive asset of substantial value as a symbol of Plaintiff, its quality products and services, and its goodwill.

32.     As a result of the long and exclusive use by Plaintiff of its INVISIBLE FENCE Marks, the large sales under the INVISIBLE FENCE Marks, and the large amount of money spent or foregone for advertising and promotion of its goods and services, the INVISIBLE FENCE Marks have become famous through the wide recognition of the general consuming public of the United States as a designation of the source of services and goods of and originating from Plaintiff.

33.     Plaintiff and its use of the INVISIBLE FENCE Marks in the pet products industry are well-known.

### C.     PLAINTIFF'S ELECTRONIC PET CONTAINMENT PRODUCTS

34.     Plaintiff, under its Invisible Fence® Brand, sells various electronic pet containment fencing solutions, including in-ground and wireless fencing products.

35.     Plaintiff, under its Invisible Fence® Brand, offers for sale an in-ground electronic pet containment product called Boundary Plus® (the "Boundary Plus® product").

36.     Plaintiff, under its Invisible Fence® Brand, offers for sale a wireless electronic pet containment product called GPS 2.0 – The Ultimate Wire Free Pet Fence (the "GPS Containment product").

7

37. Plaintiff, under its Invisible Fence® Brand, offers for sale a digital electronic pet containment product called 800 Series Digital Pet Fence (the "Digital Pet Fence product").

38. Plaintiff's Boundary Plus® products, GPS Containment products, and Digital Pet Fence products, in all models, shall be referred to collectively hereinafter as the "Invisible Fence® Products." True and correct copies of webpages from Plaintiff's website located at www.invisiblefence.com are attached hereto as collective **Exhibit 4**.

39. Plaintiff also offers for sale accessory and replacement products and services for use in connection with its Invisible Fence® Products, including, but not limited to: Computer Collar® signal receivers in various models; replacement batteries and battery plans; wire break repair kits; extension kits for wireless pet containment solutions; and service and safety check-up services; among other products and services.

## D. DEFENDANT'S WANTON, KNOWING, AND INTENTIONAL UNLAWFUL CONDUCT

40. Without Plaintiff's knowledge or consent, and beginning long after Plaintiff had established extensive and valuable goodwill in connection with its goods and services identified by the subject marks, Defendant commenced to use, and is currently using, in interstate commerce and commerce affecting interstate commerce, Plaintiff's INVISIBLE FENCE® trademark, as well as the phrases "INVISIBLE FENCES" and/or "INVISIBLE", or variants thereof similar to or likely to cause confusion with the INVISIBLE FENCE Marks (the "Infringing Marks") as a trademark in connection with the sale, offering for sale, distribution, advertising, and promotion of its services, including, without limitation, electronic pet containment systems, products, and services.

41.     Upon information and belief, Defendant owns and operates the Pet Stop Website located at www.petstop.com.  A true and correct copy of select webpages from the Pet Stop Website is attached hereto as collective **Exhibit 5**.

42.     On the Pet Stop Website, Defendant states that "Pet Stop is Sold by Qualified Dealers Nationwide."

43.     Defendant franchises and/or operates a dealer network under the "PET STOP" brand throughout the United States, including without limitation in Tennessee and this district.

44.     The Pet Stop Website lists Rocky Top Dog Fence as Defendants's local dealer for the following Tennessee counties: Anderson County, Blount County, Jefferson County, Knox County, Loudon County, and Sevier County.

45.     Upon information and belief, the interactive Pet Stop Website was designed to form contacts with potential customers, inviting customers to "get in touch" with Defendant by submitting a contact form, whereupon Defendant "will respond within 3 business days."  *See* Exhibit 5.

46.     Upon information and belief, the interactive Pet Stop Website was designed to form contacts with potential customers, inviting customers to use the Pet Stop Website to "Find My Local Dealer."  *See* Exhibit 5.

47.     Upon information and belief, the interactive Pet Stop Website was designed to form contacts with potential customers, inviting them to "Become a Pet Stop Dealer."  *See* Exhibit 5.

48.     Upon information and belief, the interactive Pet Stop Website further collects personal information from potential and/or existing customer visitors and uses such personal information, among other purposes, "to improve and enhance the Site, analyze trends, administer

the Site and for our market research activities[;]" "to customize your visit to the Site and for other purposes to make your visit more convenient or to enable us to enhance our service[;]" and/or "to anonymously determine how much time visitors spend on each page of our Site, how visitors navigate throughout the Site and how we may tailor our web pages to better meet the needs of visitors." *See* Exhibit 5.

49.     On the Pet Stop Website, Defendant frequently and prominently uses the INVISIBLE FENCE® Mark without authorization, including, without limitation, in the website title "Pet Stop® The Dog Fence Experts • An Invisible Fence® Alternative;" on the website homepage, which contains a section titled "Why Choose Pet Stop® over Invisible Fence®?"; on the website's "Leaders" webpages, which states that "[i]n 1993, John Purtell sold his interest in Invisible Fence® while the company was at its zenith. Today, the company is on its third owner; an American company that specializes in Chinese manufacturing."

50.     Through its use of the Infringing Marks, including, but not limited to, on the Pet Stop Website and/or through its encouragement, knowledge, and/or intentionally "looking the other way" of its franchisees' unlawful uses of Infringing Marks, Defendant seeks to unfairly trade off the valuable goodwill and reputation built by Plaintiff through its INVISIBLE FENCE Marks.

51.     Defendant's uses of the Infringing Marks in interstate commerce to advertise, promote, and operate its electronic pet containment systems, products, and services, and through the Pet Stop Website, were never approved, permitted or endorsed by Plaintiff, and occurred after Plaintiff had established extensive and valuable goodwill in connection with its goods and services identified by the INVISIBLE FENCE Marks.

52.     Defendant's use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without Plaintiff's consent, and beginning long after Plaintiff had established extensive and valuable goodwill in connection with its goods and services identified by the INVISIBLE FENCE Marks.

53.     Plaintiff's first use in commerce of the INVISIBLE FENCE Marks predates Defendant's first use of the Infringing Marks and, therefore, have priority over Defendant's first use of the Infringing Marks.

## E.     HARM TO PLAINTIFF

54.     Plaintiff and Defendant are competitors in the electronic pet containment industry.

55.     Defendant's use of the Infringing Marks is without Plaintiff's permission or authority and is likely to cause confusion, mistake, and deception among consumers and customers.

56.     Defendant's use of the Infringing Marks in interstate commerce to advertise, promote, and market its goods and services were never approved, permitted or endorsed by Plaintiff, and occurred after Plaintiff had established extensive and valuable goodwill in connection with its goods and services identified by the INVISIBLE FENCE Marks.

57.     In selecting and continuing its use of the Infringing Marks, notwithstanding its actual knowledge of Plaintiff's rights, Defendant has acted and continues to act with the wanton disregard for Plaintiff's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill that Plaintiff has established in the INVISIBLE FENCE Marks.  Defendant's actions have caused and continue to cause its goods and services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with Plaintiff.

58.     The infringing trade names and trademarks utilized by Defendant are colorable imitations of and confusingly similar to the INVISIBLE FENCE Marks.

59.     Defendant's wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the source, nature, characteristics, and quality of the goods and services offered by Defendant.

60.     Defendant's wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the to the origin, sponsorship, or approval of the goods and services offered by Defendant with or by Plaintiff.

61.     Defendant's offering of electronic pet containment systems, products, and services under the Infringing Marks is likely to cause, to the extent it has not already, actual confusion, actual injury, and loss of goodwill and business to Plaintiff.

62.     Upon information and belief, Plaintiff has lost sales from, and Defendant has wrongfully profited from, sales of Defendant's products, services, and accessory products for use in connection with the Pet Stop Products.

63.     Defendant has offered for sale, continues to offer for sale, has sold, and enables others to sell its Infringing Product.

## V.     CAUSES OF ACTION

## COUNT I

### FEDERAL AND STATE TRADEMARK INFRINGEMENT

64.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

65.     Defendant's acts constitute infringement of Plaintiff's exclusive rights to the INVISIBLE FENCE Marks in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of Plaintiff's trademark rights under Tennessee state and common law.

66.     Defendant has used in commerce a reproduction, counterfeit, copy, or colorable imitation of the INVISIBLE FENCE Marks in connection with the sale, offering for sale, distribution, or advertising of Defendant's goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

67.     Defendant's acts of infringement have caused Plaintiff damages, and Plaintiff seeks judgment pursuant to 15 U.S.C. § 1117 for Defendant's profits made by Defendant's unauthorized and infringing use of the INVISIBLE FENCE Marks, or variants thereof similar to or likely to cause confusion with the INVISIBLE FENCE Marks, for the damages sustained by Plaintiff, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendant's actions.

68.     Plaintiff seeks an award of punitive and/or treble damages for at least three times the amount of Defendant's profits or Plaintiff's damages, whichever is greater, due to the nature of Defendant's wanton and willful conduct.

69.     Pursuant to 15 U.S.C. § 1116 and equity, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant to stop the illegal infringing conduct.

70.     Pursuant to 15 U.S.C. § 1118 and equity, Plaintiff is entitled to impoundment and destruction of infringing articles.

71.     Plaintiff is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendant's profits; any damages sustained by Plaintiff; and costs.

## COUNT II

### TRADE NAME INFRINGEMENT

72.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

73.     Defendant's acts constitute trade name infringement in violation of Plaintiff's trade name rights at common law.

74.     Defendant's acts of infringement have caused Plaintiff damages, and Plaintiff seeks judgment for Defendant's profits made by Defendant's unauthorized and infringing use of Plaintiff's trade name, for the damages sustained by Plaintiff, for all costs necessary to remediate the infringing uses and their effects, and for the costs incurred in bringing the present action.

75.     Further, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant to stop the illegal conduct.

## COUNT III

## FEDERAL STATUTORY UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

76.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

77.     Defendant has used names and marks which are identical or confusingly similar to Plaintiff's INVISIBLE FENCE Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendant are made by, approved by, sponsored by, or affiliated with Plaintiff.

78.     Defendant's acts as alleged herein were committed with the intent to pass off Defendant's goods and services as the goods and services of, approved by, sponsored by, or affiliated with Plaintiff, and with the intent to deceive and defraud the public.

79.     Defendant's acts constitute unfair competition and passing off, and have caused Plaintiff damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Plaintiff's goodwill and reputation caused by Defendant.

80.     Defendant's acts constitute violations of 15 U.S.C. § 1125.

81.     Defendant's acts of unfair competition have caused Plaintiff damages, and Plaintiff seeks judgment pursuant to 15 U.S.C. § 1117 for Defendant's profits made by Defendant's unfair competition and passing off of Plaintiff's goods and services, for the damages sustained by Plaintiff, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendant's actions.

82.     Plaintiff further seeks judgment for three times the amount of Defendant's profits or Plaintiff's damages, whichever is greater, due to the nature of Defendant's conduct.

83.     Pursuant to 15 U.S.C. § 1116 and equity, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant to stop the illegal infringing conduct.

84.     Pursuant to 15 U.S.C. § 1118 and equity, Plaintiff is entitled to impoundment and destruction of infringing articles.

## COUNT IV

**FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)**

85.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

86.     Defendant has caused products and/or services to enter interstate commerce designated with variations of the INVISIBLE FENCE Marks.

87.     Defendant's use of said designation and other representations constitute a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant with Plaintiff and as to the origin, sponsorship, or approval of such goods and services by Plaintiff.

88. Defendant's acts are in violation of 15 U.S.C. § 1125 in that Defendant has used in connection with its goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant with Plaintiff and as to the origin, sponsorship, and approval of Defendant's goods, services, and commercial activities by Plaintiff.

89. Defendant's acts have caused Plaintiff damages, and Plaintiff seeks judgment pursuant to 15 U.S.C. § 1117 for Defendant's profits made by Defendant's unfair competition and passing off of Plaintiff's goods and services, for the damages sustained by Plaintiff, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendant's actions.

90. Plaintiff further seeks judgment for three times the amount of Defendant's profits or Plaintiff's damages, whichever is greater, due to the nature of Defendant's conduct.

91. Pursuant to 15 U.S.C. § 1116 and equity, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant to stop the illegal infringing conduct.

92. Pursuant to 15 U.S.C. § 1118 and equity, Plaintiff is entitled to impoundment and destruction of infringing articles.

## COUNT V

## TRADEMARK DILUTION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(c)

93. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

94. Plaintiff and its INVISIBLE FENCE Marks have been famous for a significant amount of time.

95.    Defendant's use of Plaintiff's INVISIBLE FENCE Marks, or variants thereof similar to or likely to cause confusion with the INVISIBLE FENCE Marks, have been used in commerce for Defendant's commercial gain.

96.    Defendant has engaged in dilution by blurring because Defendant's use of the INVISIBLE FENCE Marks, or variants thereof similar to or likely to cause confusion with the INVISIBLE FENCE Marks, has already caused or is likely to cause an association arising from the similarity between Defendant's Infringing Marks and Plaintiff's marks that impairs the actual or acquired distinctiveness of Plaintiff's INVISIBLE FENCE Marks.

97.    Defendant has engaged in dilution by tarnishment because Defendant's use of the INVISIBLE FENCE Marks, or variants thereof similar to or likely to cause confusion with the INVISIBLE FENCE Marks, has already caused or is likely to cause an association arising from the similarity between Defendant's infringing use and literally false and/or deceptively misleading representations and Plaintiff's INVISIBLE FENCE Marks that harms the reputation and goodwill associated with Plaintiff's INVISIBLE FENCE Marks.

98.    Defendant's acts have already caused or are likely to cause an association arising from the similarity between the Infringing Marks and Plaintiff's marks that lessens the capacity of Plaintiff's marks to identify and distinguish its goods and services.

99.    Defendant willfully intended to trade on the recognition of Plaintiff and its famous marks.

100.    Defendant's acts are in violation of 15 U.S.C. § 1125(c).

101.    Defendant's acts have caused Plaintiff damages, and Plaintiff seeks judgment pursuant to 15 U.S.C. § 1117 for Defendant's profits made by Defendant through its unlawful acts, for the damages sustained by Plaintiff, for all costs necessary to remediate the unlawful acts

and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendant's actions.

102.     Plaintiff further seeks judgment for three times the amount of Defendant's profits or Plaintiff's damages, whichever is greater, due to the nature of Defendant's conduct.

103.     Pursuant to 15 U.S.C. §§ 1116 and 1125(c)(1) and equity, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant to stop the illegal conduct.

104.     Pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to impoundment and destruction of infringing articles.

## COUNT VI

### VIOLATIONS OF THE TENNESSEE TRADEMARK ACT, TENN. CODE ANN. § 47-25-501 *et seq.*

105.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

106.     Plaintiff's INVISIBLE FENCE Marks are distinctive or have acquired secondary meaning.

107.     Defendant, with full knowledge of the public recognition of Plaintiff's famous marks, intended to and willfully traded on goodwill associated with Plaintiff's marks.

108.     Defendant's acts, including its use of Plaintiff's trademarks and trade names, have created a likelihood of dilution of the distinctive quality of Plaintiff's trademarks and trade names and/or a likelihood of injury to Plaintiff's business reputation.

109.     Defendant's acts constitute violations of Sections 47-25-513(a) and (b) of the Tennessee Code.

110.     Plaintiff is entitled to injunctive relief, damages, and all other available statutory remedies.

## <u>COUNT VII</u>

## **UNFAIR COMPETITION IN VIOLATION OF TENNESSEE COMMON LAW**

111.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

112.     As alleged herein, Plaintiff owns the INVISIBLE FENCE Marks.

113.     As alleged herein, the INVISIBLE FENCE Marks are valid and legally protectable.

114.     Defendant's infringing use of the INVISIBLE FENCE Marks, and/or variants thereof similar to or likely to cause confusion with the INVISIBLE FENCE Marks, is likely to cause confusion concerning the origin of the goods and services associated with the mark.

115.     Plaintiff and Defendant are competitors in the electronic pet containment industry, and compete for a common pool of customers.  As alleged herein, Defendant has engaged in unfair, deceptive, or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Tennessee common law.

116.     Through Defendant's unauthorized use of the INVISIBLE FENCE Marks, and/or variants thereof similar to or likely to cause confusion with the INVISIBLE FENCE Marks, in connection with its electronic pet containment systems, products, and services, and on the Pet Stop Website, and in commerce, Defendant has committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

117.     Through Defendant's wrongful acts alleged herein, Defendant has created a likelihood of confusion about the source and sponsorship of Defendant's products.

118.     Defendant is liable to Plaintiff for unfair competition under Tennessee law, because Defendant's conduct is tortious and has deprived Plaintiff of customers and other prospects.

119.    Defendant's acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase its sales, customer base, and share in the electronic pet containment industry and/or eliminate Plaintiff from the electronic pet containment industry.

120.    Defendant's acts as alleged herein constitute unfair competition in violation of Tennessee law.

121.    Defendant's acts constituting unfair competition have caused Plaintiff damages as alleged herein.

122.    Defendant's foregoing acts constitute unfair competition and infringement of Plaintiff's common law rights for which Plaintiff has no adequate remedy at law.

123.    Defendant's acts of unfair competition have caused Plaintiff damages, and Plaintiff seeks judgment for Defendant's profits made by Defendant's unfair competition and/or passing off of Plaintiff's goods and services, for the damages sustained by Plaintiff, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendant's actions.

124.    Plaintiff further seeks judgment for punitive damages of at least three times the amount of Defendant's profits or Plaintiff's damages, whichever is greater, due to the nature of Defendant's conduct.

125.    Further, Plaintiff is entitled to preliminary and permanent injunctive relief against Defendant to stop the illegal conduct

## COUNT VIII

### COMMON LAW UNJUST ENRICHMENT

126.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

127.   Upon information and belief, Defendant's willful and knowing acts, including its use of Plaintiff's trademarks and trade names, permitted Defendant to procure customers that it otherwise would not have been able to obtain.

128.   Plaintiff has conferred a benefit, directly or indirectly, upon Defendant through Defendant's use of the Infringing Marks.

129.   Defendant has received appreciable benefits from using the Infringing Marks in commerce.

130.   It is inequitable for Defendant to retain the benefits of the use of the Infringing Marks, including, but not limited to, monetary and reputational benefits and value of the INVISIBLE FENCE Marks.

131.   Defendant's acts have caused Plaintiff damages such that monetary and injunctive remedies are appropriate.

132.   Defendant has been unjustly enriched by virtue of its use of the Infringing Marks, to the detriment of Plaintiff, as well as consumers in the marketplace.

133.   Defendant's actions have been made willfully and knowingly.

134.   Defendant's acts have caused Plaintiff damages and unjustly enriched Defendant as alleged herein.

135.   Plaintiff is entitled to all available remedies, including preliminary and permanent injunctive relief, damages, Defendant's profits, enhanced damages, and costs.

## VI.   ENTITLEMENT TO INJUNCTIVE RELIEF

136.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

137.   By reason of Defendant's acts alleged herein, Plaintiff has and will suffer immeasurable, and thus irreparable, damage to its business, reputation, and goodwill.

138.     Upon information and belief, Defendant intends to continue to do the acts complained of herein unless restrained and enjoined.

139.     Plaintiff's remedy at law is inadequate.

140.     Plaintiff is entitled to a preliminary and permanent injunction prohibiting Defendant, and its affiliates, agents, servants, and employees, and anyone acting with its authority or on its behalf, from directly or indirectly using any mark, word, name, or domain name similar to the INVISIBLE FENCE Marks, which is likely to cause confusion or mistake or to deceive.

## VII.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A.     The Court enter a judgment in favor of Plaintiff and against Defendant as to all causes of action alleged herein;

B.     That this Court issue preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, Tennessee law, and equity, enjoining and restraining Defendant, and its affiliates, agents, partners, servants, and employees, or anyone acting with its authority or on its behalf, from directly or indirectly using any mark, word, designation, name, or domain name similar to Plaintiff's INVISIBLE FENCE Marks that is likely to cause confusion or mistake or to deceive;

C.     That, within five (5) days of issuance of preliminary and/or permanent injunctions, the Court order Defendant to file a sworn statement under oath and subject to penalty of perjury that it has fully complied with the terms of the injunctions;

D.     That this Court, pursuant to 15 U.S.C. § 1118 and equity, order that all labels, signs, prints, packages, wrappers, receptacles, pictures, websites and advertisements in the possession or under the control of Defendant bearing any mark, word, designation, name, or domain name that is confusingly similar to Plaintiff's INVISIBLE FENCE Marks and all plates,

Case 3:17-cv-00082-JRG-CCS   Document 1   Filed 03/03/17   Page 22 of 24   PageID #: 22

molds, matrices, and other means of making the same, shall be delivered to Plaintiff and destroyed;

E.      That Defendant be required to account to Plaintiff for any and all benefits or profits derived by Defendant from the use of any name or mark incorporating any mark, word, designation, name, or domain name that is confusingly similar to Plaintiff's INVISIBLE FENCE Marks, including the sale of any and all products or services associated with any such name or mark, and for all damages sustained by Plaintiff by reason of said acts of unfair competition, false designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125, Tenn. Code Ann. § 47-25-501 *et seq.*, and Tennessee common law;

F.      That Plaintiff be awarded statutory damages under 15 U.S.C. § 1117(c), should Plaintiff so elect;

G.      That this Court award Plaintiff punitive and/or treble damages in an amount no less than three times the amount of Defendant's profits or Plaintiff's damages, whichever is greater, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of its actions;

H.      That the costs of this action be awarded to Plaintiff;

I.      That Plaintiff be awarded its reasonable attorney fees due to the exceptional nature of this case and Defendant's intentional, wanton and willful illegal conduct;

J.      That Defendant be liable for any award of monetary damages, statutory damages, treble damages, punitive damages, costs, and/or attorney fees;

K.      That pre-judgment and post-judgment interest be awarded to Plaintiff; and

L.      That this Court grant such other and further relief as it shall deem just.

## DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded for all issues so triable.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

/s/ Samuel F. Miller
Samuel F. Miller, TN Bar No. 22936
Maia T. Woodhouse, TN Bar No. 30438
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone: (615) 726-5594
Facsimile: (615) 744-5594
Email: smiller@bakerdonelson.com
          mwoodhouse@bakerdonelson.com

*Counsel for Plaintiff Invisible Fence, Inc.*